UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL J. STEVENS,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

        Defendant.

Case No. C09-702-JCC-BAT

**REPORT AND RECOMMENDATON**

Plaintiff Daniel J. Stevens seeks judicial review of the denial of his application for disability insurance benefits and supplemental security income benefits by the Commissioner of the Social Security Administration, after a hearing before an administrative law judge ("ALJ"). Dkt. 1. This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule MJR 4(A)(4) and as authorized by *Matthews v. Weber*, 423 U.S. 261 (1976). Dkt. 10. Stevens contends that the ALJ erred in assessing Stevens's residual functional capacity and in finding that Stevens could perform work that exists in significant numbers in the national economy. For the reasons below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

Stevens, who was born in 1955, was 47 years old on the alleged onset date and 53 years old

REPORT AND RECOMMENDATION - 1

when the ALJ issued his decision. Tr. 54. He has a high school education and past work experience as a plumber. Tr. 57, 65.

In July 2005, Stevens applied for disability insurance benefits and supplemental security income alleging disability as of September 20, 2002. Tr. 57-59, 566-69. His application was denied. Tr. 48, 570. He reapplied for disability insurance benefits and supplemental security income in April 2006, again alleging disability as of September 20, 2002. Tr. 54-56, 571-73. His second application was denied initially and on reconsideration. Tr. 41-42, 44-47, 574-77. The ALJ held a hearing on September 22, 2008, and issued a decision on October 28, 2008 finding Stevens not disabled. Tr. 16. On March 25, 2009, the Appeals Council denied Stevens's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 6-8. Stevens now seeks judicial review of the Commissioner's final decision.

## II. THE ALJ's DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Stevens met the insured status requirements of the Social Security Act through June 30, 2007 and that he had not engaged in substantial gainful activity since September 20, 2002. Tr. 18.

At step two, the ALJ found that Stevens had the severe impairment of degenerative disc disease. *Id*.

At step three, the ALJ found that Stevens did not have an impairment that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

The ALJ next found that Stevens had the residual functional capacity:

> to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit up to six hours in an eight hour workday. The claimant can frequently climb ramps and stairs, stoop, kneel, and

      crawl, and he can occasionally climb ladders, ropes, and scaffolds.
      The claimant should avoid concentrated exposure to hazards such
      as machinery or heights.

*Id.*

  At step four, the ALJ found that Stevens was unable to perform any past relevant work. Tr. 22.

  At step five, the ALJ found that, considering Stevens's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. *Id.* The ALJ accordingly found that Stevens was not disabled from September 20, 2002 through the date of the decision. Tr. 23.

## II. STANDARD OF REVIEW

  This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## III. DISCUSSION

### A. The ALJ's residual functional capacity finding

  Stevens argues that the ALJ's residual functional capacity finding does not reflect the ALJ's actual assessment of Stevens's residual functional capacity. Stevens points to the opinion of his treating physician, Thomas Williamson-Kirkland, M.D., that Stevens would be able to perform light

work, with certain postural limitations, and as long as he could "stand up, sit down, change positions, and have a reasonable chair." Tr. 183. The ALJ gave this opinion significant weight in assessing Stevens's residual functional capacity. Tr. 21. But the residual functional capacity finding does not address the need for a sit/stand option. Tr. 19. The Court agrees that this omission leaves the ALJ's residual functional capacity finding unsupported by substantial evidence.

Plaintiff insists that this omission is merely a "scrivener's mistake" and that the ALJ's true determination of this issue is located in his discussion of Dr. Williamson-Kirkland's opinion, where the ALJ found that Stevens requires an at-will sit/stand option. Dkt. 12 at 7. However, in evaluating Stevens's residual functional capacity, the ALJ also considered the opinions of examining physician David Zucker, M.D., treating physician Ronald Waltz, M.D., and the non-examining state agency physician, as well as lay opinion evidence. Tr. 20-22. The ALJ gave Dr. Williamson-Kirkland's opinion significant weight, but he did not adopt the opinion outright. He also gave substantial weight to Dr. Zucker's opinion, some weight to the state agency physician's opinion, and little weight to Dr. Waltz's opinion and the lay witness evidence. Not all of these sources opined that Stevens needed an at-will sit/stand option. In addition, the ALJ found that Stevens's statements about the intensity, persistence, and limiting effects of his symptoms were not fully credible. Tr. 20.

As Stevens himself points out, where the claimant needs to alternate sitting and standing, the residual functional capacity assessment "must be specific as to the frequency of the individual's need to alternate sitting and standing." Social Security Ruling 96-9p.[1] But the ALJ failed to make

---

[1] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or

this specific finding. 42 U.S.C. § 405(b) directs the Commissioner to make findings of fact. If a district court rejects an ALJ's finding because it is not supported by substantial evidence, 42 U.S.C. § 405(g) authorizes the district court to remand the case for rehearing before the agency. It does not authorize the court to make its own findings of fact. This section, which governs this Court's jurisdiction and the applicable standard of review, "makes no provision for a district court to make any findings of its own." *Grant v. Shalala*, 989 F.2d 1332, 1338 (3rd Cir. 1993).

The Court declines to presume that the ALJ intended to find that Stevens needs to alternate sitting and standing at will. Because the ALJ's residual functional capacity finding is not supported by substantial evidence and, and because this is an outstanding issue that must be resolved before determination of disability can be made, remand for further consideration by the ALJ is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). On remand, the ALJ should make a specific finding as to the frequency of Stevens's need to alternate sitting and standing in determining his residual functional capacity.

### B. Vocational expert testimony

The hypothetical question the ALJ posed to the vocational expert did not include the need to alternate sitting and standing. Tr. 611-12. For this reason, the vocational expert's testimony did not provide substantial evidence to support the ALJ's finding that Stevens could perform other work in the national economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (hypothetical questions posed to vocational experts must set out all of a claimant's impairments). The Commissioner concedes that there was insufficient evidence to support a finding that two of the jobs identified by the vocational expert, messenger and night patroller, allowed the opportunity to alternate sitting and standing. Dkt. 16 at 8, n.1. But the Commissioner argues that the vocational

---

regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 5

expert's testimony was sufficient evidence to support a finding that Stevens can do the job of photocopy machine operator. The vocational expert testified: "I believe this would allow for movement with the machine, could probably sit down while it's operating, could stand up, walk around." Tr. 614. This general statement, however, does not cure the ALJ's failure to specify the frequency of Stevens's need to alternate standing and sitting. On remand, the ALJ should again obtain testimony from a vocational expert, and, in posing a hypothetical question to the expert, should specify the frequency of Stevens's need to alternate standing and sitting.

Stevens also argues that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT")[2] and the ALJ failed to obtain a reasonable explanation for the conflict. Under SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a vocational expert's testimony is consistent with the DOT and, if there is a conflict, determine whether the vocational expert's explanation for the conflict is reasonable. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). SSR 00-4p also requires the ALJ to explain in the decision how he or she resolved the conflict. An error in following the procedural requirements of SSR 00-4p may be harmless if the vocational expert provided sufficient support for her conclusion so as to justify any conflicts. *Massachi*, 486 F.3d at 1154 n.19.

Here, the vocational expert testified that the job of photocopy machine operator is light work, which is consistent with the DOT's classification of the job at DOT No. 207.685-014. Tr. 614. The ALJ asked the vocational expert if her testimony was consistent with the DOT, and she stated that it was. *Id.* The ALJ found that the vocational expert's testimony was consistent with the

---

[2] The Social Security Administration has taken administrative notice of the DOT, published by the Department of Labor, as a source of reliable job information for purposes of a step-five analysis. 20 C.F.R. § 404.1566(d). The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). But an ALJ may also use a vocational expert at step five. 20 C.F.R. § 404.1566(e).

REPORT AND RECOMMENDATION - 6

information in the DOT. Tr. 23. The ALJ thus satisfied the requirements of SSR 00-4p.

Stevens takes issue with the vocational expert's additional testimony that she believed the photocopy machine editor job "would allow for movement with the machine, could probably sit down while it's operating, could stand up, walk around." Tr. 614. However, this is precisely the type of testimony a vocational expert can provide. As SSR 00-4p provides, the DOT lists the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." A vocational expert can provide testimony that matches the specific requirements of a designated occupation with the specific abilities and limitations of the claimant. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). On remand, if the vocational expert provides such testimony, the ALJ should obtain a reasonable explanation from the vocational expert for any departure from the DOT and explain in the decision how he resolved any conflict.

**C.    Lay witness evidence**

Stevens argues that the ALJ failed to properly assess the lay witness evidence of William McTaggert. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing do. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for disregarding lay witness testimony must be specific. *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Mr. McTaggert testified that Stevens was unable to golf or attend sporting events, that bike riding relieved Stevens's back pain, that Stevens sits in the recliner when he visits McTaggert's house and only gets up to stretch and move around, that Stevens has to supplement his pain medication with Tylenol or aspirin or he cuts it in half to make it last longer, that Stevens cannot

ride comfortably in a car, and that Stevens was unable to help Mr. McTaggert remodel his house. Tr. 606-09. The ALJ found that Mr. McTaggert's testimony supported Stevens's allegations, but gave it little weight because it was based on Stevens's self reports and was not consistent with the medical evidence. Tr. 22.

Stevens argues that the ALJ erred by requiring Mr. McTaggert's opinion to be supported by medical evidence. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (holding that ALJ erred in discrediting lay witness testimony as not supported by medical evidence in the record). But the ALJ in fact found that Mr. McTaggert's opinion was not consistent with the medical evidence. An ALJ may properly discount lay witness evidence that is inconsistent with medical evidence. *Lewis*, 236 F.3d at 511; *see also* 20 C.F.R. § 404.1529(c)(3) ("[A]ny symptom-related functional limitations and restrictions which . . . other persons report, *which can reasonably be accepted as consistent with the objective medical evidence* and other evidence, will be taken into account . . . ." (emphasis added)). This was a proper reason to discount Mr. McTaggert's testimony.

Nevertheless, the Court finds that, although the ALJ stated a valid reason, he failed to specify how Mr. McTaggert's opinion conflicted with the medical evidence. Mr. McTaggert testified that Stevens would stand or shift positions every 5 to 10 minutes when sitting. This is consistent with the medical evidence from Dr. Williamson-Kirkland. On remand, the ALJ should reconsider the weight to give to Mr. McTaggert's testimony, giving specific reasons for discounting it, if necessary.

Stevens also argues that, contrary to the ALJ's finding, Mr. McTaggert's testimony was based largely on Mr. McTaggert's own observations of Mr. Stevens. But Mr. McTaggert testified about the effects of bike riding on Stevens's pain and the effectiveness of Stevens's pain medications. This testimony was based on Stevens's reports of his symptoms, not Mr. McTaggert's

REPORT AND RECOMMENDATION - 8

observations of Stevens. This was a germane reason to give little weight to these portions of Mr. McTaggert's testimony.

### D. Non-physician adjudicator

Stevens argues that the ALJ erred by evaluating the opinion of a non-physician state-agency adjudicator as that of an acceptable medical source.

In evaluating Stevens's residual functional capacity, the ALJ found that the "residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.'" Tr. 21. The ALJ stated that they found that Stevens could perform light work with minimal postural and environmental limitations. The ALJ gave these opinions some weight, noting that, although "these physicians were non-examining," there were a number of other opinions that reached similar conclusions. Tr. 21-22. The ALJ cited to exhibits 3F and 16F in making this finding. Exhibit 3F is a residual functional capacity assessment signed by a state-agency staff person who is not a physician or psychologist and who, in certain cases, is tasked with making an initial determination as to whether a claimant is disabled. Tr. 167; Dkt. 12 at 20, Dkt. 16 at 6. Exhibit 16F is a case analysis signed by John Bonner, M.D., who concluded that the "previously proposed RFC's are appropriate." Tr. 517.

Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1513(a). Only opinions from acceptable medical sources can establish the existence of an impairment. *Id.* But the ALJ may consider other-source opinions about the severity of a claimant's impairments and how the impairments affect the claimant's ability to work. *Id.* § 404.1513(d).

Stevens argues that the ALJ made a harmful error when he evaluated the staff person's opinion as though it were a physician's opinion. He cites to an Eighth Circuit case, which found that an ALJ who made a similar mistake erred by crediting the non-physician's opinion and,

because the ALJ had given that opinion substantial weight and had refused to give controlling weight to the claimant's treating physician, the error was harmful. *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007).

The situation here is dissimilar from that case. Here, the ALJ gave only some weight to the non-physician's opinion, while giving significant weight to Dr. Williamson-Kirkland's opinion. In addition, the non-physician's opinion was later reaffirmed by a state-agency physician, and the ALJ appropriately evaluated the state-agency physician's opinion as that of an acceptable medical source. Finally, the non-physician's opinion here was largely consistent with Dr. Williamson-Kirkland's opinion except as to the need to alternate sitting and standing. Although, on remand, the ALJ should consider this opinion as that of a source other than an acceptable medical source, the Court is convinced that the error was inconsequential to the ultimate nondisability conclusion and was therefore harmless. *See Stout*, 454 F.3d at 1055.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED for further proceedings. A proposed order accompanies this Report and Recommendation.

DATED this 26th day January, 2010.

BRIAN A. TSUCHIDA
United States Magistrate Judge